IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| DOUGLAS O. MYNATT, | ) | |
| | ) | |
| Defendant. | ) | Case No. 20-cr-20035 |

**DEFENDANT'S SENTENCING MEMORANDUM**

NOW COMES the Defendant, DOUGLAS O. MYNATT, by and through his attorney, ELISABETH R. POLLOCK of the Federal Defender's Office for the Central District of Illinois, and for his Sentencing Memorandum states as follows:

**Procedural History**

On June 3, 2020, Mr. Mynatt was charged by indictment with three counts of distribution of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1), and one count of possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2). (R. 12) Mr. Mynatt entered into a written plea agreement with the government on October 9, 2020. R. 22. His sentencing hearing is scheduled before this Court on January 14, 2021.

**Sentencing Guidelines Calculations and Objection to the Presentence Report**

In the Presentence Report, Mr. Mynatt is assessed a total offense level of 37, which when combined with Criminal History Category I, results in a sentencing range of 210 to 262 months. PSR ¶ 66. This calculation includes a two-level enhancement for

the use of a computer under U.S.S.G. § 2G2.2(b)(6). PSR ¶ 36. Mr. Mynatt objects to the inclusion of this enhancement. First, the Department of Justice has agreed that the use of computer enhancement should not apply.[1] Second, district courts across this district have routinely declined to impose the computer enhancement in run-of-the-mill child pornography cases because it does fundamentally nothing to differentiate amongst offenders when all similar offenses also involve the use of a computer.

It is anticipated that the government will not object to the removal of the computer enhancement in this case. Should the court agree not to apply the use of computer enhancement, Mr. Mynatt's total offense level would be 35, which when combined with Criminal History Category I, results in a sentencing range of 168 to 210 months. Based on the foregoing, Mr. Mynatt respectfully requests that the Court utilize this Guidelines range at sentencing in this cause.

## History of U.S.S.G. § 2G2.2

Most interested parties, including the Department of Justice and the federal defense bar, agree that U.S.S.G. § 2G2.2 needs to be revised because the guideline as it currently exists is severely outdated.[2] Specifically, the consensus is that the guideline structure is outmoded, does not meaningfully distinguish between offenders, and is overly severe in some cases.[3]

---

[1] "…the enhancement for the use of a computer in Section 2G2.2(b)(6) is no longer useful and should be eliminated." https://www.justice.gov/sites/default/files/criminal/legacy/2013/07/11/2013annual-letter-final-071113.pdf (last visited 1/8/21)
[2] *See* 2012 Report to the Congress: Federal Child Pornography Offenses at pp. 10-12, available at https://www.ussc.gov/research/congressional-reports/2012-report-congress-federal-child-pornography-offenses (last visited 1/10/21) (hereinafter referred to as "2012 Commission Report").
[3] *Id.* at pg. 244.

In 2012, the United States Sentencing Commission published its summary of issues relating to the application of U.S.S.G. § 2G2.2. *Id.* According to the Sentencing Commission, several factors prompted the report: the increase in number of child pornography offenses sentenced under 2G2.2, the steady decrease of within-guideline sentences imposed by federal district courts, the fact that "existing sentencing scheme in non-production cases no longer adequately distinguishes among offenders based on their degrees of culpability," social science research, and a consensus that the guidelines are outdated.[4] The Commission noted that:

> "… four of the of six sentencing enhancements in §2G2.2 — those relating to computer usage and the type and volume of images possessed by offenders, which together account for 13 offense levels — now apply to most offenders and, thus, fail to differentiate among offenders in terms of their culpability. These enhancements originally were promulgated in an earlier technological era, when such factors better served to distinguish among offenders. Indeed, most of the enhancements in §2G2.2, in their current or antecedent versions, were promulgated when the typical offender obtained child pornography in printed form in the mail."[5]

"Very few federal crimes engender as much debate and disparity in sentencing as child pornography offenses. Largely due to Congressional action, penalties for child pornography offenses have steadily risen, both in the base offense level assigned and the applicable sentencing enhancements. At the same time, both the sentencing commission and the federal judiciary have pushed back, largely rejecting the

---

[4] *Id.* at ii-iii.
[5] *Id.* at ii, 165.

ever-increasing sentences called for by legislation." *United States v. Smith,* 2019 WL 5692169 *2 (N.D. Ind. Nov. 4, 2019) (holding that 78-month sentence was appropriate for child pornography offender who possessed 3321 images and 555 videos across six hard drives, including images of bondage and prepubescent minors).

"While far from uniform, the majority approach by federal courts to the ever-increasing Guideline ranges for child pornography defendants has been to use their sentencing authority to grant downward variances from the Guidelines. Whether the variances are based on the individual characteristics of the defendants, the collateral consequences of pornography charges, an evaluation of moral culpability, policy disagreements, or skepticism over the empirical bases for the Guidelines, federal district courts have largely rejected the notion that the Guidelines reflect appropriate sentences in child pornography cases." *Id.* at *3.

As noted in the 2012 Commission Report, a "typical" child pornography offense now nearly always results in multiple guideline enhancements and "exposes the vast majority of defendants today to substantial penalty ranges under the sentencing scheme" currently in place.[6] Courts across the country have responded to this issue by frequently imposing sentences below the applicable sentencing guidelines range. According to the 2019 Sentencing Commission Sourcebook, the mean sentence for child pornography offenders is 103 months, with a median of 84 months.[7] Of those

---

[6] *Id.* at 207.
[7] Available at https://www.ussc.gov/research/sourcebook-2019 (last visited 1/8/21)

defendants receiving a downward variance, the mean decrease was 40.5% and the median decrease was 38.1%.[8]

### Argument as to Appropriate Sentence

As with every case, the most important factors for the district court to consider are those in 18 U.S.C. § 3553(a), and include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed--
   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available; and
(4) the kinds of sentence and the sentencing range established by the Guidelines.

Each of these factors are addressed below.

#### A.     Nature and Circumstances of the Offense

The underlying offense conduct involves the use of an online chat application (Kik messenger) to obtain images containing illegal sexual exploitation material. PSR ¶¶ 12-13. In total, Mr. Mynatt possessed approximately 40 videos and 100,000 images of child pornography, organized in no particular way. PSR ¶ 26. The images possessed contained images of children, nearly all female, between the ages of 6 and 15 years old. PSR ¶¶ 16-26.

---

[8]https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2019/Table40.pdf (last visited 1/8/21)

This conduct can be generally described as a typical child pornography offense. The term "typical" applies because, as recognized in the 2012 Commission Report, Mr. Mynatt has received several sentencing enhancements which apply in over 90% of child pornography cases: images depicting prepubescent minors (2-level enhancement), use of a computer (2-level enhancement), and more than 600 images (5-level enhancement).[9] He also receives a 4-level enhancement for possessing images of sadomasochistic conduct, which applies in almost 75% of cases.[10] A "typical" offender these days accesses illegal material on numerous occasions, across months or years, and possesses hundreds if not thousands of images.[11]

Mr. Mynatt is also typical when comparing his circumstances to those of other child pornography offenders:

> The overwhelming majority of §2G2.2 offenders in fiscal year 2010 were white male United States citizens in Criminal History Category I. The average age of such offenders was 42. The typical offender was employed at the time of the offense, had at least some college education, and had a positive net worth at the time of sentencing. The vast majority of non-production offenders reported neither a history of childhood sexual abuse nor a history of substance abuse.[12]

Based on the foregoing, the totality of the circumstances indicate that Mr. Mynatt has committed an offense that is typical in most ways as compared to others charged with the same crime.

---

[9] 2012 Commission Report at xi; PSR ¶¶ 33, 36, 37.
[10] *Id.*; PSR ¶ 35.
[11] 2012 Commission Report at 71, 77.
[12] *Id.* at 164.

### B. History and Characteristics of the Defendant

Doug Mynatt was raised in Knoxville, Tennessee, and until the crime charged in this case, led a completely crime-free life. He was a cross-country runner, and after college and a stint in the Peace Corps in Africa, he dedicated his life to teaching P.E. and coaching cross-country and track at an elite Urbana high school (University Laboratory). While coaching at Uni, Doug produced 10 state champions in track and field and dozens of cross-country appearances at the IHSA state meet. Everyone who has known Doug throughout his life shares the same shock and surprise that he could have committed a crime such as this one because it is wholly inconsistent with how he conducted himself and how he treated people. Regardless, the impact he has had on his students, his community, and the world of high school sports in Illinois is overwhelmingly positive. Doug's influence in the lives of his students and their families can be seen from the dozens of letter of support he received, which will be filed separately under seal due to the large quantity of personally identifying information contained therein.

### C. The Need to Reflect Just Punishment, Afford Adequate Deterrence, Protect the Public from Future Crimes of the Defendant, and Provide Needed Services

It is difficult to explain what causes someone like Doug Mynatt, who had a loving family, a successful career, and the respect of his community to commit an offense such as the one charged here. There is a debate amongst experts regarding what the "cause" of this behavior is, with some scientists asserting that it is based on an underlying diagnosis of pedophilia, while others assert that the connection is

uncertain.[13] Among the non-sexual motivations for viewing child pornography are curiosity, compulsive internet use and collecting behaviors, avoidance of stress, dissatisfaction with life, and the need to escape into an online community where an offender can have more social success than in their real life.[14]

Regardless of the reason *why* the offense was committed, the Court should be rightly concerned with whether or not Mr. Mynatt is a risk of re-offending in the future. The defense position is that he is *not*.

Most scientists agree that viewing child pornography alone does not cause individuals to commit sex offenses.[15] There is also no conclusive evidence that involvement in online collecting communities is a risk factor for the commission of sex offenses against children.[16] Regarding risk to others, Mr. Mynatt has never committed an act of violence or sexual abuse against a child. This is important because offenders who *have* committed a hands-on offense are qualitatively different than those who have not.[17] In general, the average sentence length for offenders who have committed criminal sex offenses was approximately 138 months, whereas those without a history of criminal sex offenses was approximately 74 months.[18]

Part of ensuring that Mr. Mynatt does not recidivate is ensuring that appropriate treatment interventions are provided. Social science research indicates that psycho-

---

[13] 2012 Commission Report at 75-77.
[14] *Id.* at 8-79.
[15] *Id.* at 102.
[16] *Id.* at 105.
[17] *Id.* at 170.
[18] *Id.* at 206.

sexual treatment, including cognitive-based therapy, has been shown to be generally effective for preventing recidivism.[19] This element is satisfied by the terms of supervised release recommended in the Presentence Report, specifically Paragraph 82, to which Mr. Mynatt has no objection. The Court should also consider that a study of child pornography offenders in non-production cases found a general recidivism rate of 30%, with only 7.4% of offenders committed new sex offenses, which are similar rates to other studies, including one conducted by the Bureau of Prisons.[20]

In the present case, the Court should also consider the genuineness of Mr. Mynatt's remorse for his conduct in addition to his lightning-fast acceptance of responsibility, starting from the first instant he was questioned by law enforcement. Mr. Mynatt provided the investigating agents with all of his device passwords and consented to the search of said devices in an effort to accept responsibility for his conduct. These are not the actions of someone who lacks remorse, and supports the assertion that he will not be a risk of harm in the future.

### D. Kinds of Sentences Available and the Sentencing Range Established by the Guidelines

As argued above, the child pornography guideline is out of date, does not consider technological advances, and generally proposes sentencing ranges which are grossly inflated. The Court should therefore place less stock in the sentencing guidelines calculation and should place more emphasis on Mr. Mynatt's individual

---

[19]*Id.* at pg. 291.
[20]*Id.* at pp, 300, 310.

history and characteristics and avoiding unwarranted sentencing disparities in fashioning an appropriate sentence. Congress has established that the minimum term of this offense is 60 months. As of today's date, Mr. Mynatt is 57 years old. He will undoubtedly spend the remainder of his son's childhood in prison, as he is currently 14 years old. He has also destroyed his career as a teacher and coach, and will never again be allowed to work in his chosen field. His wife is divorcing him and his family has been torn apart. When considering the nature and circumstances of the offense (typical), his history and characteristics (exemplary), the need for specific deterrence (low) and Mr. Mynatt's extraordinary acceptance of responsibility, a sentence close to the mandatory minimum is appropriate but not greater than necessary to accomplish the goals of sentencing.

WHEREFORE, the Defendant DOUGLAS O. MYNATT respectfully requests that this Court impose a sentence of 60 months of imprisonment, 15 years of supervised release, a $400.00 special assessment, no fines, and any other relief the Court deems appropriate.

Respectfully Submitted,

DOUGLAS O. MYNATT, Defendant

BY:   /s/ Elisabeth R. Pollock
ELISABETH R. POLLOCK
Assistant Federal Public Defender
300 West Main Street
Urbana, Illinois 61801
Telephone: (217) 373-0666
Facsimile: (217) 373-0667
Email: Elisabeth_Pollock@fd.org

*CERTIFICATE OF SERVICE*

I hereby certify that on January 11, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Assistant United States Attorney Elly Peirson.

/s/ Elisabeth R. Pollock
ELISABETH R. POLLOCK
Assistant Federal Public Defender
300 West Main Street
Urbana, Illinois 61801
Telephone: (217) 373-0666
Facsimile: (217) 373-0667
Email: Elisabeth_Pollock@fd.org